[Cite as *State v. Kennard*, 2023-Ohio-4664.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| RICHARD KENNARD, | : | Case No. 2023CA00026 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Stark County Court
of Common Pleas, Case No.
2022CR0627

JUDGMENT: Affirmed

DATE OF JUDGMENT: December 21, 2023

APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
Stark County, Ohio

By: VICKI L. DESANTIS
Assistant Prosecuting Attorney
Appellate Division
110 Central Plaza South Ste. 510
Canton, Ohio 43702-1413

For Defendant-Appellant

WILLIAM GALLAGHER
Arenstein & Gallagher
114 East 8th Street
Cincinnati, Ohio 45202

*Baldwin, J.*

**{¶1}** The appellant appeals his convictions on multiple drug and weapons charges, arguing that the jury's verdict is unsupported by sufficient evidence and is against the manifest weight of the evidence. Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND THE CASE

**{¶2}** On May 5, 2022, the appellant was indicted on the following:

Count One - aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(c), a felony of the second degree;

Count Two – aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (A)(2)(C)(1)(d), a felony of the second degree;

Count Three – possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(d), a felony of the second degree;

Count Four – trafficking in cocaine in violation of R.C. 2925.03(A)(1), (A)(2)(C)(4)(e), a felony of the second degree;

Count Five – improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B)(I), a felony of the fourth degree;

Count Six – having weapons while under disability in violation of R.C. 2923.13(A)(3)(B), a felony of the third degree; and,

Count Seven – aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree.

The appellant pleaded not guilty, and the matter proceeded to trial. The following evidence was presented.

**{¶3}** On March 26, 2022, at 2:30 a.m., Ohio State Highway Patrol Trooper Jason Halstead observed a lone white vehicle travelling southbound on Interstate 77 and began to follow the driver, later identified as the appellant. Shortly thereafter, the appellant moved from the right lane to the left lane and sped off. By the time Trooper Halstead caught up to the appellant, they were traveling at over 100 miles per hour. At one point, Trooper Halstead testified that he was going 114 miles per hour in a 55 mile per hour zone.

**{¶4}** Trooper Halstead activated his lights and siren, and the appellant pulled over. Trooper Halstead immediately smelled raw marijuana when he approached the car. When asked for his driver's license, the appellant stated he that would get his license back in August, and provided the trooper with his name and social security number. Trooper Halstead called for backup in order to conduct a search of the vehicle. Sergeant Bryan Sponaugle from Canton Highway Patrol Post was dispatched to assist.

**{¶5}** Trooper Halstead requested that the appellant step out of the vehicle, and a pat down yielded no weapons on the appellant's person. Trooper Halstead placed the appellant into the back of his cruiser, and the appellant locked his vehicle. Trooper Halstead Mirandized the appellant, and explained that once Sergeant Sponaugle arrived they would search the vehicle. The appellant told Trooper Halstead that his mother owned the vehicle and then called her, as well as his brother. Upon Sergeant Sponaugle's arrival the officers asked the appellant to provide them with the key fob in order to unlock the vehicle, but he refused. The appellant's brother arrived, but quickly left. The appellant's mother then arrived. She talked the appellant into giving her the key fob, after which she immediately unlocked the vehicle.

{¶6} Officers began to search the vehicle, at which time Sergeant Sponaugle also detected the smell of marijuana. During the search, he found an empty holster in the center console of the car, and saw a Coach "backpack" type bag on the floor in the back-seat area. Sergeant Sponaugle opened the Coach bag, and found a loaded firearm on top of several items of drug contraband. Trooper Halstead also searched the car and bag and saw the firearm, as well as a variety of drugs which were later identified as heroin, methamphetamine, cocaine, crack, and a small amount of marijuana. Trooper Halstead testified that the firearm and drugs were easily accessible to the driver.

{¶7} The items were seized and Trooper Halstead secured them in his cruiser. The appellant's mother was then permitted to leave with her vehicle. She never admitted that the drugs or the firearm were hers, and Sargent Sponaugle testified that she did not admit to owning the Coach bag. Once the items were secured, Sergeant Sponaugle assisted Trooper Halstead in placing the appellant under arrest.

{¶8} Trooper Halstead packaged up the narcotics upon returning to the patrol post. He also test-fired the weapon, confirming that it was operable. The confiscated items were placed in the evidence locker. Trooper Halstead identified the Glock 26 firearm with the magazine and live rounds at trial, as well as the bags of narcotics found in the car which included heroin, fentanyl, methamphetamine, cocaine, and marijuana. He also identified the printout of the evidence submission form from the crime lab that showed the types of drugs and their bulk amounts. Additionally, he testified as to the bulk amount of each drug.

{¶9} Trooper Halstead testified that drugs for trafficking are often transported by car, and that often the person will drive someone else's car so their car will not be towed

or seized. The amount of drugs found in the appellant's car was not for individual use. Trooper Halstead explained that drugs are broken down into smaller bags and sold, and testified that the digital scale found in the car evidenced trafficking because the scale, which is considered drug paraphernalia, is used for weighing out the smaller amounts of drugs.

{¶10} Sergeant Sponaugle also identified photographs of the bags of contraband during his trial testimony. In addition, he identified the firearm, testifying that the semi-automatic pistol contained a magazine at the time of the search. Sergeant Sponaugle also testified that the empty baggies found in the car were often used to divide drugs up into smaller amounts. In addition, he also identified the digital scale.

{¶11} The parties stipulated to the admission of the lab report, as well as the appellant's two prior offenses.

{¶12} Further, Trooper Halstead testified regarding two telephone calls in which the appellant participated while in the Stark County jail. He identified the two jail calls, and identified the appellant's voice speaking with a female. In one call the appellant called his wife, who said that on a Friday night, when he had been drinking, he should not have had that bag on him; the appellant responded "I know," and said further that his mother was angry at him for trying to throw her under the bus. In the other jail call played for the jury, the appellant stated that his mother should have "taken the rap" because she would have only gotten probation. Both jail calls were played for the jury.

{¶13} The jury deliberated, and found the appellant guilty on all counts. The appellant filed a timely appeal, and sets forth the following two assignments of error:

**{¶14}** "I. WHERE MR. APPELLANT'S CONVICTIONS WERE BASED UPON LEGALLY INSUFFICIENT EVIDENCE, MR. APPELLANT WAS DENIED DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

**{¶15}** "II. WHERE MR. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, MR. APPELLANT WAS DENIED DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

**{¶16}** The appellant argues that his convictions were not based upon sufficient evidence and were against the manifest weight of the evidence. We disagree.

### STANDARD OF REVIEW

**{¶17}** The appellant challenges his convictions on both manifest weight and sufficiency of the evidence grounds. Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 164 Ohio St.3d. 589, 2021-Ohio-2207, 174 N.E.3d 754:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a

reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57.

**{¶18}** Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**{¶19}** Manifest weight of the evidence, on the other hand, addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355. The Court stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra,* at 1594.

*Id.* at 387.

**{¶20}** The Court stated further:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

**{¶21}** In addition, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

**{¶22}** "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc.*

*v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**ANALYSIS**

**{¶23}** Trooper Halstead testified at trial regarding how his dash and body cams are activated when he makes a traffic stop, and the footage of the appellant's stop was played for the jury. The video began by showing Trooper Halstead several car lengths behind the appellant on I-77 south, and showed that the appellant switched lanes and sped off. Trooper Halstead thereafter activated his lights, at which time the appellant pulled over and stopped. The dash cam was stopped, and the bodycam automatically activated.

**{¶24}** Trooper Halstead called for backup. He then approached the vehicle and asked the appellant to step out. He placed the appellant in his cruiser, Mirandized the appellant, and told the appellant he was not under arrest. Trooper Halstead told the appellant that he could stop talking at any time. The appellant stated that his mother smoked weed earlier in the vehicle, and that is why it smelled like weed. Trooper Halstead told the appellant that he was giving him a ticket for speeding and not having a driver's license. The appellant then asked to call his brother and mother, since she owned the vehicle. The appellant had previously locked the vehicle, and stated he was waiting on his mother to arrive before he would hand over the key.

**{¶25}** The appellant told Trooper Halstead that there were no weapons in the vehicle, and then stopped talking. His brother arrived, but quickly left. His mother arrived, and unlocked the vehicle. The car was searched and the Coach "backpack" type bag was found containing a firearm, various drugs, and drug paraphernalia. The appellant's mother

told officers that she had a bag that looked like the Coach bag found in the vehicle, but she did not admit that the bag found in the vehicle was hers. The officers arrested the appellant. The appellant thereafter participated in two telephone calls from the jail, both of which were played for the jury, in which he admitted that he "should not have had that bag on him;" that his mother was angry at him for trying to throw her under the bus; and, that his mother should have "taken the rap" because she would have only gotten probation.

{¶26} We have thoroughly reviewed the trial proceedings in this case, and we find that, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the appellant committed the essential elements of the crimes with which he was charged. Furthermore, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the appellant's convictions must be reversed and a new trial ordered. We therefore find that the appellant's convictions were supported by sufficient evidence, and were not against the manifest weight of the evidence. Accordingly, the appellant's first and second assignments of error are overruled.

## CONCLUSION

**{¶27}** Based upon the foregoing, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Hoffman, J. concur.